UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

       Plaintiff,

     -against-

HEMA PATEL, *et al.*

       Defendants.

Criminal Action No. 16-0584 (DRH)(AYS)

## MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION TO DISMISS THE VERIFIED PETITION OF NALIN PATEL, DNA HOTELS, LTD. AND NEEPA VINA INVESTMENTS, LLC.

Richard P. Donoghue
United States Attorney
Eastern District of New York
Attorney for Defendant
610 Federal Plaza
Central Islip, New York 11722

Robert W. Schumacher
 Assistant U.S. Attorney
  (Of Counsel)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

BACKGROUND ............................................................................................................. 2

STATUTORY FRAMEWORK OF ANCILLARY PROCEEDINGS ........................................... 6

STANDARD OF REVIEW ................................................................................................ 10

ARGUMENT ................................................................................................................. 11

    I.     Nalin's Petition Should Be Stricken Because It Fails To Indicate Whether He Is
           Proceeding Under Section 853(n)(6)(A) or (B) ............................................ 11

    II.    Nalin's Petition Should Be Dismissed Because It Fails To State A Claim .................... 13

CONCLUSION ............................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...................................................................... 10, 11

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)...................................................................... 10, 11

*Caplin & Drysdale v. United States,*
  491 U.S. 617 (1989)........................................................................... 15

*Mercado v. U.S. Customs Service,*
  873 F.2d 641 (2d Cir.1989)................................................................. 13

*Nakahata v. New York Presbyterian HealthCare System,*
  723 F.3d 192 (2d Cir. 2012)............................................................... 10

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,*
  595 F.3d 86 (2d Cir. 2010)................................................................. 10

*Pacheco v. Serendensky,*
  393 F.3d 348 (2d Cir. 2004).................................................... 8, 10, 15

*United States v. $138,381,*
  240 F. Supp. 2d 220 (E.D.N.Y. 2003) ................................................ 13

*United States v. Amiel,*
  995 F.2d 367 (2d Cir. 1993)................................................................. 8

*United States v. Battle,*
  2008 WL 5056875 (S.D. Fla.  March 3, 2008) .................................... 12

*United States v. BCCI Holdings (Lux.), S.A.,*
  69 F. Supp. 36 (D.D.C. 1999) .............................................................. 7

*United States v. Carrie,*
  206 Fed. Appx. 920 (11th Cir. 2006)................................................... 15

*United States v. Ceballos-Lepe,*
  977 F. Supp. 2d 1085 (D. Utah 2013).............................................. 12, 13

*United States v. Church & Dwight Co., Inc.*,
   2013 WL 379845 (2d Cir. Feb 1, 2013)............................................................8

*United States v. Daugerdas*,
   892 F.3d 545 (2d Cir. 2018)....................................................................15

*United States v. Dupree*,
   919 F. Supp. 2d 254 (E.D.N.Y. 2013) ...........................................................7

*United States v. Eldick*,
   223 Fed. Appx. 837 (11th Cir. 2007)..........................................................15

*United Sates v. Fabian*,
   2013 WL 150361 (W.D. Mich. Jan. 14, 2013) ...............................................14

*United States v. Fleet*,
   498 F.3d 1225 (11th Cir. 2007) ...............................................................11

*United States v. Ginn*,
   799 F.Supp.2d 645 (E.D.La.2010) .............................................................14

*United States v. Gordon*,
   710 F.3d 1124 (10th Cir. 2013) .................................................................7

*United States v. Hailey*,
   924 F.Supp.2d 648 (D. Md. 2013) .............................................................12

*United States v. Jimerson*,
   5 F.3d 1453 (11th Cir. 1993) ...................................................................11

*United States v. Klemme*,
   894 F. Supp. 2d 1113 (E.D. Wis. 2012).......................................................14

*United States v. Kokko*,
   2007 WL 2209260 (S.D. Fla. July 30, 2007)..................................................14

*United States v. One Men's Rolex Pearl Master Watch*,
   357 Fed. Appx. 624 (6th Cir. 2009)...........................................................13

*United States v. Peterson*,
   2013 WL 1830217 (S.D.N.Y. May 1, 2013) ..................................................11

*United States v. Puig*,
419 F.3d 700 (8th Cir. 2005) ...................................................... 6

*United States v. Ribandeniera*,
105 F.3d 833 (2d Cir. 1997)..................................................... 8, 9

*United States v. Soreide*,
461 F.3d 1351 (11th Cir. 2006) ........................................ 7, 11, 16

*United States v. Speed Joyeros*,
410 F. Supp. 2d 121 (E.D.N.Y. 2006) ...................................... 13

*United States v. Strube*,
58 F. Supp. 2d 576 (M.D. Pa. 1999) .......................................... 8

*United States v. Timley*,
507 F.3d 1125 (8th Cir. 2007) ............................................... 8, 9

*United States v. Vithidkul*,
2014 WL 979206 (D. Md. Mar. 12, 2014)................................. 14

*Willis Mgmt. (Vt.), Ltd. v. United States*,
652 F.3d 236 (2d Cir. 2011)........................................... 6, 8, 10

## **Statutes**

18 U.S.C. § 983(d) ....................................................................... 11

18 U.S.C. §§ 1343 ...................................................................... 2, 3

21 U.S.C. § 853 ...................................................................... *passim*

8 U.S.C. § 1324 ......................................................................... 2, 3

## **Federal Rules**

Fed. R. Civ. P. 12 ................................................................... *passim*

Fed. R. Crim. P. 32.2 .............................................................. *passim*

The United States of America respectfully submits this memorandum of law in support of its motion to dismiss the Verified Petition (Docket Entry No. 108) filed by Nalin Patel ("Nalin"), individually and as owner and sole member of Neepa Vina Investment, LLC ("NeepaVina") and DNA Hotels, Ltd., ("DNA") ("Nalin's Petition" or the "Petition"), pursuant to Fed. R. Crim. P. 32.2(c)(1)(A).

In his Petition, Nalin alleges that he, along with NeepaVina and DNA, have interest in real property, accounts, cash, and various items that were seized and ordered forfeited to the United States in this criminal proceeding's Preliminary Order of Forfeiture, dated June 20, 2018 ("POF"). (Docket Entry No. 259) Nalin makes this claim despite the fact that co-conspirators (including Nalin's wife Hema Patel ("Hema")) pled guilty to their role in an international alien smuggling organization ("ASO") and admitted that the seized/forfeited assets are proceeds of, and/or facilitating property for, the violation of their crimes. While the government anticipates that discovery in this matter would demonstrate that Nalin—at a minimum—had knowledge of, and directly benefited from his wife's participation in the ASO, Nalin's claim need not be litigated further than the pleading stage. Indeed, and as fully set forth below, Nalin's Petition is deficient on its face and should be stricken. First, Nalin's Petition is deficient because it fails to specify under which statutory framework Nalin is making his claim—specifically 21 U.S.C. § 853(n)(6)(A) or (B). Second, the Petition is deficient because it fails to meet the stringent pleading requirements of 21 U.S.C. § 853(n)(3) by sufficiently setting forth "the nature and extent of the [his] right, title, or interest in the property, the time and circumstances of [his] acquisition of the right, title, or interest in the property, [and/or] any additional facts supporting [his] claim." Put simply, Nalin's Petition fails to adequately present his purported claims and the courts are clear that, under such circumstances, dismissal is warranted without leave to amend.

## <u>BACKGROUND</u>

In or around 2013, the U.S. Department of Homeland Security ("DHS") initiated an investigation into a worldwide ASO being orchestrated and carried out among individuals and entities abroad and residing domestically in, among other places, Texas and New York. Specifically, law enforcement investigated Chandresh Kumar Patel ("Chandu), Nalin's wife Hema, and her company, Hema's Immigration Bond Service ("HIBS"), among others (collectively the "Co-Conspirators"), for human smuggling, wire fraud and money laundering in violations of 8 U.S.C. § 1324 and 18 U.S.C. §§ 1343 and 1957.

In connection with this investigation, law enforcement learned that the Co-Conspirators facilitated the travel and concealment of foreign nationals (the "Nationals" or the "Illegal Aliens") en route to the United States. Specifically, law enforcement learned that, the Nationals and their families would pay tens to hundreds of thousands of dollars to the Co-Conspirators who would then arrange for illegal entry of Nationals into the United States with the intent of being detained and incarcerated by law enforcement. Once incarcerated, the Co-Conspirators would supply the now Illegal Aliens with fraudulent identity documents to be utilized in support of immigration bond applications to affect their ultimate release from custody. Once the Illegal Aliens were bonded by, HIBS, Hema's immigration bonding agency, the Illegal Aliens would abscond and breach their bond(s) and continue to reside in the United States illegally.

The Co-Conspirators utilized and operated numerous bank accounts to funnel co-mingled funds obtained from, and in connection with, the ASO (collectively the "Subject Accounts"). In addition, the ASO conspiracy was orchestrated and operated out of, among other places, a Texas Inn located at 118 N. Expressway 77 Raymondville, Texas (the "Texas Inn"), and a La Quinta Inn located at 128 N. Expressway 77, Raymondville, Texas 78580 (the "La Quinta Inn").

Indeed, HIBS was operated out of the Texas Inn and both the Texas Inn and the La Quinta Inn were used to house the Illegal Aliens.

On or about November 17, 2016, Hema and Chandu were arrested for their roles in the ASO. Simultaneous with these arrests, law enforcement, pursuant to a warrant signed by the Honorable Magistrate Judge Anne Y. Shields, seized the following items as proceeds traceable to violations of, *inter alia*, human smuggling, wire fraud and money laundering statutes (*i.e.* 8 U.S.C. § 1324 and 18 U.S.C. §§ 1343 and 1957):

    (a) Any and All Funds on Deposit in BBVA Compass Bank Account Number ending in 9749 Held in the Name of Hema N. Patel, and all proceeds traceable thereto ("BBVA Acct. 9749");

    (b) Any and All Funds on Deposit in Capital One Bank Account Number ending in 6495 Held in the Name of Nalin Patel ("Nalin") dba HIBS, and all proceeds traceable thereto ("Capital One Acct. 6495");

    (c) Any and All Funds on Deposit in Capital One Bank Account Number ending in 5857 Held in the Name of Nalin dba HIBS, and all proceeds traceable thereto ("Capital One Acct. 5857");

    (d) Any and All Funds on Deposit in First Community Bank Account Number ending in 8727 Held in the Name of Nalin dba HIBS, and all proceeds traceable thereto ("First Community Acct. 8727");

    (e) Any and All Funds on Deposit in Inter National Bank ("INB") Account Number ending in 7387 Held in the Names of Nalin and Hema, and all proceeds traceable thereto ("INB Acct. 7387");

    (f) Any and All Funds on Deposit in International Bank of Commerce ("IBC") Account Number ending in 4628 Held in the Name of DNA Hotels, Ltd. dba La Quinta Inn & Suites, and all proceeds traceable thereto ("IBC Acct. 4628");

    (g) Any and All Funds on Deposit in IBC Account Number ending in 9501 Held in the Name of Neepa Vina Investments, LLC. dba Texas Inn and Suites, and all proceeds traceable thereto ("IBC Acct. 9501");

    (h) seven hundred dollars and no cents ($700.00) in United States currency, eleven (11) one ounce yellow gold bars seized from seized from First Community Bank, safe deposit box number 130 (the "$700 in U.S. Currency and Gold");

(i) seven thousand six hundred seventy-five dollars and no cents ($7,675.00) in United States currency and various pieces of jewelry seized from First Community Bank safe deposit box no. 135 and various pieces of jewelry seized from First Community Bank, safe deposit box number 130 (the "$7,675 in U.S. Currency and Jewelry");

(j) three thousand three hundred ninety dollars and no cents ($3,390.00) in United States currency and eight hundred dollars ($800) in money orders seized from Nalin and Hema's residence located at 208 East Auburn, McAllen, Texas (the "3,390 in U.S. Currency and $800 in Money Orders"); and

(k) Any and All Funds on Deposit in Treasury Account Symbol 70X6697, Fund Code 05 held for or on behalf of Nalin, Hema and/or HIBS, up to and including the sum of seven million one hundred ninety-eight thousand two hundred dollars and no cents ($7,198,200.00) ("Treasury Acct. 6697").

On or about November 18, 2016, the government filed a Notice of Lis Pendency against 5 Miller Circle, Hicksville, New York (the "New York Property") as property/premises used to facilitate the ASO and violations of federal law. Funds received through the ASO were used to pay the mortgage that encumbers this property.

Moreover, on or about November 21, 2016, the government filed Notices of Lis Pendency against the Texas Inn and La Quinta Inn property/premises used to facilitate the ASO and violations of federal law. As previously stated, HIBS operated out of the Texas Inn and both that building and the La Quinta Inn were used to house the Illegal Aliens. Moreover, funds received through the ASO and HIBS were used to pay mortgages that encumber each property. The New York Property, Texas Inn, La Quinta Inn and the accounts and items listed above at (a) to (k) are referred to collectively as the "Subject Assets."

On or about June 7, 2018, Hema pled guilty to Count Two of the indictment charging her with Alien Smuggling for Financial Gain, a violation of 8 U.S.C. § 1324(a)(2)(B)(ii). In the POF entered on June 20, 2018, Hema consented to the forfeiture of the Subject Assets as proceeds of, and/or facilitating property for, the violation of the crimes. (Docket Entry No. 259, at Pages 1-3)

4

On or about November 30, 2017, Chandu plead guilty to Count Two of the indictment charging him with Alien Smuggling for Financial Gain, a violation of 8 U.S.C. § 1324(a)(2)(B)(ii). In the POF entered on March 14, 2018, Chandu consented to the forfeiture of the Subject Assets[1] as proceeds of, and/or facilitating property for, the violation of the crimes. (Docket Entry No. 87, at Pages 1-4).

On October 5, 2018, Chandu was sentenced to 36 months for his role in the ASO. Sentencing for Hema is currently pending before this Court and the ASO Investigation remains ongoing.

From March 20, 2018 through and including April 18, 2018, the government published notice of the forfeiture on the government website www.forfeiture.gov. In addition, on or about June 25, 2018, the government served all potential claimants with a copy of the POF. Pursuant to 21 U.S.C. § 853(n)(6), any person, other than the defendant, asserting a legal interest in property, may, within thirty (30) days of the final publication of notice or receipt of notice or no later than sixty (60) days after the first day of publication, whichever is earlier, petition the court to adjudicate the validity of his or her alleged interest in the property.

Nalin's Petition was filed on July 19, 2018. (Docket Entry No. 108) In his Petition, Nalin alleges that he is "an owner" of DNA (Docket Entry No. 108 at p. 6), which he in turn claims is the fee simple owner of the La Quinta Inn property and IBC Acct. 4628 (Docket Entry No. 108 ¶¶ 1(a), (b)). Nalin alleges that he is the "sole member" of NeepaVina (Docket Entry No. 108 at p. 6) which he in turn claims is fee simple owner of the Texas Inn property and IBC Acct. 9501 (Docket Entry No. 108 ¶¶ 1(a), (b)). Finally, Nalin claims he possesses an individual

---

[1]    Chandu's POF does not include the following:  $700 in U.S. Currency and Gold, $7,675 in U.S. Currency and Jewelry, $3,390 in U.S. Currency and $800 in Money Orders.

interest/ownership in: (1) the LaQuinta Inn; (2) the Texas Inn; (3) INB Acct. 7387; (4) IBC Acct. 4628; (5) IBC Acct. 9501; (6) $700 in U.S. Currency and Gold; (7) $7,675 in U.S. Currency and Jewelry; and (8) $3,390 in U.S. Currency and $800 in Money Orders. (Docket Entry No. 108 ¶¶ 3(a)-(h))  Hereinafter, the real property listed above in (1)-(2) shall be referred to as the "Claimed Real Property"); the accounts listed above in (3)-(5) shall be referred to as the "Claimed Accounts"; and the cash and items listed above in (6)-(8) shall be referred to as the "Claimed Currency And Property")(collectively, the "Claimed Assets").

## STATUTORY FRAMEWORK OF ANCILLARY PROCEEDINGS

The exclusive procedure by which third parties may seek to recover an alleged interest in forfeited property is through a post-trial ancillary proceeding.  *See* 21 U.S.C. § 853(n); 28 U.S.C. § 2461(c)(incorporating procedure set forth in 21 U.S.C. § 853 into criminal forfeiture proceedings); Fed. R. Crim. P. 32.2(c).  "[T]he purpose of the ancillary proceeding is for the District Court . . . to amend orders of forfeiture and apportion assets when one or more third parties claim an interest in the property to be forfeited."  *Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236, 246 (2d Cir. 2011).  Only if a third party establishes a valid and superior interest in the forfeited property shall that property be stricken from the final order of forfeiture.  21 U.S.C. § 853(n)(6).  If, however, the third party does not establish a valid and superior interest in the property, then the United States "shall have clear title to property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee."  21 U.S.C. § 853(n)(7); *see also United States v. Puig*, 419 F.3d 700, 703 (8th Cir. 2005).

Thus, the sole purpose of the ancillary proceeding under Section 853(n) is to determine *ownership* of a forfeited asset.  *See Willis Mgmt. (Vt.), Ltd.,* 652 F.3d at 246 (holding that the purpose of this ancillary proceeding is "to amend orders of forfeiture and apportion assets when

one or more third parties claim an interest in the property to be forfeited.");*United States v. Gordon*, 710 F.3d 1124, 1167-8 (10th Cir. 2013) (holding that ownership disputes are deferred to the ancillary proceeding); *United States v. Dupree*, 919 F. Supp. 2d 254, 262-64 (E.D.N.Y. 2013) (Matsumoto, J.)(setting forth the statutory framework and procedures of ancillary proceedings).

Section 853(n)(2) delineates the process for third parties seeking to modify a final order of forfeiture to assert a claimed interest in forfeited property, and provides, in pertinent part:

> Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property.

21 U.S.C. § 853(n)(2).

A third party petition must be filed within 30 days of either final publication by the government of notice of the forfeiture, or the claimant's receipt of notice of the order of forfeiture, whichever is earlier.  21 U.S.C. § 853(n)(2).  Section 853(n)(3) further provides that:

> The petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought.

21 U.S.C. § 853(n)(3).

Thus, a third party must set forth the legal basis and all grounds for his claimed interest in the petition, and may not later amend the petition to assert additional grounds for relief.  *Id.*; *United States v. BCCI Holdings (Lux.), S.A.*, 69 F. Supp. 36, 55 (D.D.C. 1999)(collecting cases in which petitions filed under Section 1963(l) were dismissed for failure to identify nature of interest claimed); *United States v. Soreide*, 461 F.3d 1351, 1355 (11th Cir. 2006)(holding that

claims not asserted in petition were statutorily time-barred); *United States v. Strube*, 58 F. Supp. 2d 576, 585 (M.D. Pa. 1999)(rejecting third-party claims as untimely because they were not raised in petition but first asserted in response to government's motion to dismiss).  A petition will therefore succeed or fail in its original and un-amended form, particularly since courts require "strict compliance" with the rules and deadlines governing forfeiture proceedings.  *See United States v. Amiel*, 995 F.2d 367, 371 (2d Cir. 1993)(collecting cases applying "strict compliance" standard).

In order to advance a claim in an ancillary proceeding, a third party petitioner must first establish a "legal interest" in a particular asset within the meaning of 21 U.S.C. § 853(n)(2). *United States v. Ribandeniera*, 105 F.3d 833, 834-35 (2d Cir. 1997); *see also United States v. Timley*, 507 F.3d 1125, 1129 (8th Cir. 2007)("[A] party seeking to challenge the government's forfeiture of money or property . . . must first demonstrate a legal interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture.")(citation omitted). Although a "legal interest" is undoubtedly required to assert a claim under Section 853(n)(2), this term is not defined by federal law.  Rather, the Court must look to the law of the jurisdiction that created the property right to determine whether the petitioner possesses a valid interest. *Willis Mgmt. (Vt.), Ltd.*, 652 F.3d at 242 ("State law determines a petitioner's interest in the property at issue.")(*citing Pacheco v. Serendensky*, 393 F.3d 348, 353-56 (2d Cir. 2004)); *United States v. Church & Dwight Co., Inc.*, 2013 WL 379845, at *3 (2d Cir. Feb 1, 2013) (holding that court looks to law of relevant state to determine if petitioner has legal interest in property sufficient to confer standing under Section 853(n)(2)).  If the petitioner possesses no interest under applicable state law, the inquiry ends and the claim must be dismissed for lack of standing. *Ribadeneira*, 105 F.3d at 835; *Timley*, 507 F.3d at 1130.

Only after a petitioner makes a threshold showing of standing under Section 853(n)(2) may a court reach the merits of a claim in order to determine whether the claimant falls within one of two narrow categories of property owners for whom the governing forfeiture statute affords relief.  *Timley*, 507 F.3d at 1130, n. 2 (distinguishing between "legal interest" required for claimant to establish standing under Section 853(n)(2), and "superior legal interest" required for claimant to ultimately prevail on merits under Section 853(n)(6)).  Specifically, if a third party petitioner demonstrates that he has standing, the petitioner must then establish by a preponderance of the evidence either that:

> (A) [T]he petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property. . . ; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture . . . .

21 U.S.C. § 853(n)(6)(A),(B); *see also Ribadeniera*, 105 F.3d at 834-35.  Thus, even after a claimant demonstrates that he has standing to contest a forfeiture, he must still prove the merits of his claim by either demonstrating priority of ownership over the forfeited property at the time of the offense under Section 853(n)(6)(A), or by demonstrating that he acquired the property subsequently as a bona fide purchaser for value under Section 853(n)(6)(B).  *Timley*, 507 F.3d at 1130; *Ribandeniera*, 105 F.3d at 834-35.

## STANDARD OF REVIEW

Ancillary proceedings are governed by Federal Rule of Criminal Procedure 32.2(c), which provides, in pertinent part:

> [T]he court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason. For purposes of the motion, the facts set forth in the petition are assumed to be true.

Fed. R. Crim. P. 32.2(c)(1)(A); *see also Willis Mgmt. (Vt.), Ltd.*, 652 F.3d at 241.

The ancillary proceeding, which closely resembles a civil action, is generally governed by the same procedures as those set forth in the Federal Rules of Civil Procedure. *See e.g., Pacheco*, 393 F.3d at 352 (commenting that civil procedures aid efficient resolution of claims in ancillary proceedings). Accordingly, "a motion to dismiss a third party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." *Pacheco*, 393 F.3d at 352. Dismissal is appropriate where the petition does not set forth "enough facts to state a claim to relief that is plausible on its face." *Willis Mgmt. (Vt.), Ltd.*, 652 F.3d at 241-42 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be plausible, the petition need not show a probability of success, but it must evidence more than a mere possibility of a right to relief. *Twombly*, 550 U.S. at 556; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etermining plausibility is a context specific endeavor that requires the court to draw upon its experience and common sense." *Nakahata v. New York Presbyterian HealthCare System*, 723 F.3d 192, 196 (2d Cir. 2012)(citations omitted). All reasonable inferences must be drawn in favor of the petitioner. *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010). The court, however, is not required to accept "mere conclusory statements," nor is it

required to accept legal conclusions that are pleaded as factual allegations. *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555).

## ARGUMENT

I. **Nalin's Petition Should Be Stricken Because It Fails To Indicate Whether He Is Proceeding Under Section 853(n)(6)(A) or (B)**

In the first instance, Nalin's Petition should be stricken, pursuant to Fed. R. Crim. P. 32.2(c)(1)(A) and Fed. R. Civ. P. 12(f), because it fails to identify the proper statutory framework under which the claims are being made. Instead, Nalin appears to advocate that he, DNA and NeepaVina are "innocent owners" of the enumerated subject assets and that he is seemingly proceeding under 18 U.S.C. § 983(d). (Docket Entry No. 108 at ¶¶ 1(a)-(b), 2(a)-(b), 3(a)-(h)). However, that is not the proper legal standard in the context of a criminal forfeiture proceeding under § 853(n) and this error alone warrants dismissal. *See United States v. Peterson*, 2013 WL 1830217, at *4 (S.D.N.Y. May 1, 2013)("None of the applicable criminal forfeiture laws contains an 'innocent owner' defense."); *see also United States v. Fleet*, 498 F.3d 1225, 1231-32 (11th Cir. 2007)(distinguishing criminal and civil forfeiture proceedings and holding that no innocent ownership exception applies under the criminal forfeiture statute); *United States v. Soreide*, 461 F.3d 1351, 1354 (11th Cir. 2006)("Unlike the civil forfeiture statutes, the criminal forfeiture statutes contain no provision for an 'innocent owner' defense for third parties."); *United States v. Jimerson*, 5 F.3d 1453,1455 at n. 4 (11th Cir. 1993)(holding that § 853 does not contain an innocent owner provision and dismissing third party petition of defendant's wife on grounds that her alleged innocence, standing alone, cannot defeat the Government's interest in criminally forfeited property).

Indeed, where a petition does not identify whether a petitioner is proceeding under 21 U.S.C. § 853(n)(6)(A) or (B) it must be dismissed. *See, e.g., United States v. Ceballos-Lepe*, 977 F. Supp. 2d 1085, 1090 (D. Utah 2013)(dismissing a petition because the petitioner failed to "specif[y] in her petition whether her interest comes under § 853(n)(6)(A) or (6)(B)"); *United States v. Hailey,* 924 F.Supp.2d 648, 658-59 (D. Md. 2013)(holding that a claimant must plead sufficient facts showing entitlement to relief under 21 U.S.C. § 853(n)(6)(A) or (B) to survive a motion to dismiss; conclusory allegations are insufficient); *United States v. Battle*, 2008 WL 5056875, at *3 (S.D. Fla. March 3, 2008)(recommending that third party petitioner's claims be stricken), *adopted by* 2008 WL 5056840 (S.D. Fla. Nov. 21, 2008). Nalin's Petition only cites generally to Section 853(n) and claims that that, with regard to the Claimed Assets, he and/or NeepaVena and/or DNA has a "vested, good faith and legally cognizable interest in the seized property." (Docket Entry No. 108 at ¶¶ 1, 2, 3). However, this vague and ambiguous statement does not adequately comply with § 853(n)(3) and is so woefully deficient that the United States (and the Court) cannot adequately assess the claim so as to proceed with discovery or an ancillary hearing, if necessary. *See* Fed. R. Crim. P. 32.2(c)(1)(B); 21 U.S.C. § 853(n). Because the Petition is devoid of any reference to whether Nalin is claiming superior right, title or interest over the Claimed Assets under 21 U.S.C. § 853(n)(6)(A) or whether Nalin is claiming to be a bona fide purchaser for value of the Claimed Assets under 21 U.S.C. § 853(n)(6)(B), the United States is completely at a loss as to what scope and direction of discovery it should be seeking from Nalin in order to challenge the Petition. *See* Fed. R. Crim. P. 32.2(c)(1)(B)(allowing for discovery after the court rules on any motion filed under Rule 32.2(c)(1)(A)). It is respectfully submitted that the Court is also left in the dark and without any cogent legal justification or basis, as to how Petitioner intends to proceed should this ancillary proceeding require a hearing.

Therefore, the Petition should be stricken pursuant to Fed. R. Civ. P. Rule 12(f) as containing insufficient and immaterial matters.

## II.    Nalin's Petition Should Be Dismissed Because It Fails To State A Claim

As stated above, title 21 U.S.C. § 853(n)(3) requires a petition to "set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, [and/or] any additional facts supporting the petitioner's claim, and the relief sought."

The very purpose of these specific requirements for any such petition is to ensure there is no fraud on the Court.  Indeed, proper verification of a sufficiently detailed claim is not a mere procedural technicality, but places a claimant at risk of perjury for filing a false claim.  *See, e.g., United States v. One Men's Rolex Pearl Master Watch*, 357 Fed. Appx. 624, 627 (6th Cir. 2009); *United States v. Speed Joyeros*, 410 F. Supp. 2d 121, 124 (E.D.N.Y. 2006)(Weinstein, J.)(finding that petitioners failed to comply with 853(n)(3) and acknowledging that there is substantial danger of false claims in forfeiture proceedings); *Mercado v. U.S. Customs Service,* 873 F.2d 641, 645 (2d Cir.1989)("[T]here is a substantial danger of false claims in forfeiture proceedings . . .."); *United States v. $138,381*, 240 F. Supp. 2d 220, 228 (E.D.N.Y. 2003)(Dearie, J.)(Azrack, M.J.)(same); *United States v. Ceballow Lepe*, 977 F. Supp. 2d 1085 (D. Utah 2013)(stating these "are not simply technical requirements, but are construed strictly to discourage false or frivolous claims").

Here, the Co-Conspirators, including Hema, Nalin's own wife, have admitted that the Claimed Assets are proceeds of, and/or facilitating property for, the violation of crimes committed in furtherance of the illegal ASO.  (Docket Entry No. 259, at Pages 1-3, Docket Entry No. 87, at Pages 1-4)  Yet, despite the pall cast over the Claimed Assets by Hema's admitted

crimes, Nalin's Petition fails to satisfy the requirements of 21 U.S.C. § 853(n)(3) by setting for

the "nature of" and/or the "time and circumstances" of Nalin's/DNA's/NeepaVena's acquisition

of interest in the Claimed Assets.

In interpreting these requirements, courts have held that a petition must "do more than

state [the] interest in a conclusory fashion." *United States v. Kokko*, 2007 WL 2209260, at *5

(S.D. Fla. July 30, 2007); *see also United States v. Vithidkul*, 2014 WL 979206, at *2 (D. Md.

Mar. 12, 2014)(faulting petitioners for stating only that they obtained property "through previous

employment" without additional detail); *United Sates v. Fabian*, 2013 WL 150361, at *5 (W.D.

Mich. Jan. 14, 2013)(dismissing petition for, among other things, failing to satisfy the time and

circumstances requirement by including sufficient details); *United States v. Ginn,* 799 F.Supp.2d

645, 647 (E.D.La.2010)(dismissing petition where the petitioners failed to state the time of

acquisition or to provide any facts that would be sufficient for a finding that their asserted

interests were valid); *United States v. Klemme*, 894 F. Supp. 2d 1113, 1117 (E.D. Wis.

2012)("The original petition is subject to dismissal under § 853(n)(3) and Rule 32.2(c)(1)(A), as

it fails to specify the time and circumstances of petitioner's acquisition of right, title, or interest

in the [property].").

Yet, this is *exactly* what Nalin has done here. The Petition, in sum and substance,

essentially sets forth that, because Nalin, whether individually or through his ownership interest

in DNA or NeepaVina, has a "vested, good faith and legally cognizable interest in the seized

property as owner." (Docket Entry No. 108, ¶¶ 1, 2, 3) That is not enough, particularly here

where Nalin's own wife is an admitted Co-Conspirator who has admitted the Claimed Assets

were involved in, and facilitating, the ASO. Indeed, with regard to the Claimed Cash and

Property, Nalin offers no details as to when, and under what circumstances, his interests were

14

obtained.  With regard to the Claimed Accounts (some of which are in the name of Hema and/or

HIBS), Nalin does no better, as the Petition conspicuously omits specific dates, receipts, or any

documentation to substantiate how and when each account was opened, and/or any details

regarding the cash flow to and from each account.  With regard to the Claimed Real Property,

while Nalin cites generally to attached deeds in support of his claim, he again offers no details

regarding his purported acquisitions and operations of the properties.  Going further, while Nalin

cites to ownership in DNA and NeepaVina as a basis for ownership of Claimed Real Property

and Claimed Accounts, the dates of and circumstances surrounding his ownership of these

entities are not provided so that they can be compared with the dates of his wife's crimes to

determine when his alleged interest vested.  *See* 21 U.S.C. § 853(c)("All right, title and interest

in property described . . . [as property subject to criminal forfeiture] vests in the United States

upon the commission of the act giving rise to forfeiture . . ."); *United States v. Daugerdas*, 892

F.3d 545, 556 (2d Cir. 2018)(stating that section 853(n) "permits a third-party claim against a

defendant's [property] . . . only if that interest arose before the offense took place"); *Pacheo*, 393

F.3d at 353 (upholding district court's rejection of a third party claim because her interest was

not acquired until after the crime giving rise to the forfeiture); *United States v. Carrie*, 206 Fed.

Appx. 920, 922-23 (11th Cir. 2006)(because government's interest vested under the relation back

doctrine when defendant acquired property with criminal proceeds, third party petitioner could

only recover if he had an interest in the property before that time); *United States v. Eldick*, 223

Fed. Appx. 837, 840-41 (11th Cir. 2007)(under § 853(c), "the government's interest will be

superior to that of anyone whose interest does not antedate the crime.").  *See also, Caplin &

Drysdale v. United States*, 491 U.S. 617, 627 (1989)("[Section] 853(c) reflects the application of

the long-recognized and lawful practice of vesting title to any forfeitable assets in the United

States, at the time of the criminal act giving rise to forfeiture.")

In short, the vagueness of Nalin's claims mandates that his Petition be dismissed without

leave to amend, as any amended claim would be futile and time-barred. *Soreide*, 461 F.3d at

1355 (holding that claims not asserted in petition were statutorily time-barred).

## CONCLUSION

For the foregoing reasons, the government respectfully request that the Court strike

Nalin's Petition (Docket Entry No. 108) in this matter, together with such other and further relief

as this Court may deem just and proper.

Dated: Central Islip, New York
     December 4, 2018

<div style="margin-left:40%">

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722

</div>

By:    /s/ *Robert W. Schumacher*
        Robert W. Schumacher
        Assistant U.S. Attorney
        (631) 715-7871